IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  07-cv-02689-REB-KLM

MAUREEN MARTIN,

      Plaintiff,

v.

DIANA MILNER,
RUSSELL ELLIS, and
KIMBERLY THOMPSON,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN  L. MIX**

This matter is before the Court on **Defendants' Combined Motion to Dismiss Plaintiff's Complaint and Memorandum Brief in Support of Motion to Dismiss** [Docket No. 27; Filed May 9, 2008] ("Motion to Dismiss").  Plaintiff responded in opposition to the Motion to Dismiss on June 2, 2008 [Docket No. 36].  Defendants did not file a reply.  The Motion to Dismiss has been fully briefed.  Pursuant to 28 U.S.C. § 636(b)(1) and D.C. Colo. L. Civ. R. 72.1.C, the Motion to Dismiss has been referred to this Court for recommendation.  Having considered the pleadings and the docket in this case, the Court is fully advised of the issues.  For the reasons set forth below, the Court recommends that the Motion to Dismiss be **GRANTED in part and DENIED in part**.

### I.  Factual Background and Complaint

Plaintiff, *pro se*, is a prisoner incarcerated by the Colorado Department of Corrections ("CDOC") at the LaVista Correctional Facility in Pueblo, Colorado.  *Complaint*

[#4] at 2. She filed a complaint pursuant to 42 U.S.C. § 1983 asserting one claim. In that claim, she alleges that prison officials employed by the CDOC violated her Eighth and Fourteenth Amendment rights. *Id.* at 2-4. Specifically, she contends that Defendant Diana Milner's decision not to allow Plaintiff to participate in the state-provided educational program violates her constitutional rights to be free from cruel and usual punishment and to receive due process and equal protection under the law. *Id.* at 4. Her complaint names three CDOC employees and seeks "exemplary damages and punitive damages in an amount the court deems appropriate." *Id.*

## II. The Motion to Dismiss

Defendants filed a Motion to Dismiss Plaintiff's complaint on several grounds, including failure to state a claim and qualified immunity. *Motion to Dismiss* [#27] at 2-14. Plaintiff filed a Response and argues that her Eighth and Fourteenth Amendment claims should go forward. *Response* [#36] at 2-7.

## III. Analysis

### A. Standard of Review

The purpose of a motion dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is to test the jurisdictional basis for Plaintiff's complaint. When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th 1995). Here, Defendants assert that the Court lacks subject matter jurisdiction over Plaintiff's official capacity claim seeking money damages because such a claim is barred by the sovereign immunity doctrine. As such, taking Plaintiff's allegations as true, the complaint must sufficiently allege that the case is properly within the subject

matter jurisdiction of the Court to survive this stage of the pleadings.

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1974 (2007)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). Defendants' allegations that Plaintiff has failed to state claims pursuant to the Eighth and Fourteenth Amendments are reviewed under this standard.

Finally, the Court must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### B. Official Capacity Claims

3

Plaintiff seeks money damages against the named Defendants, who are officers and agents of the State of Colorado "act[ing] under color of State Law." *Complaint* [#4] at 2. Although not clear, it appears that Plaintiff seeks to hold Defendants liable in both their individual and official capacities. Defendants assert that they are immune from liability for money damages in their official capacities. *Motion to Dismiss* [#27] at 2-3. A suit against state employees in their official capacities is considered to be a suit against the state itself. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment protects states and their agents from suit in their official capacities. *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558-59 (10th Cir. 2000). Further, "[n]either states nor state officers sued in their official capacity are 'persons' subject to suit under section 1983. [Plaintiff] therefore may not seek damages from [state officials] in [their] official capacity." *Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994). Accordingly, Plaintiff's claim for money damages against Defendants in their official capacities must be **dismissed**.

However, to the extent that Plaintiff asserts any claim for injunctive relief, such a claim is not barred. *See Green v. Mansour*, 474 U.S. 64, 68 (1985) (noting "that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law"); *Neiberger v. Hawkins*, 70 F. Supp. 2d 1177, 1190 (D. Colo. 1999) (concluding that "federal jurisdiction over the individual Defendants in their official capacities for prospective [injunctive] relief is not barred by the Eleventh Amendment and is instead allowed under the *Ex Parte Young* exception"). The propriety of any request for injunctive relief is addressed below.

## C.   Personal Participation

4

Evidence of a party's personal participation in an alleged constitutional violation is essential to proceeding with a § 1983 claim against that party. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). As stated in her complaint, Plaintiff's claims against Defendants Ellis and Thompson are limited to their participation in the grievance process, more specifically that Ellis denied her step I grievance and that Thompson denied her step 2 grievance. *Complaint* [#4] at 3; *Response* [#36] at 3. The decision to terminate Plaintiff's eligibility to participate in the facility's education program, as pled by Plaintiff, was Defendant Milner's alone. *Complaint* [#4] at 3. In her Response, it appears that Plaintiff intends to assert liability against Defendants Ellis and Thompson as alleged supervisors of Defendant Milner. *Response* [#36] at 4.

The "mere involvement of processing a grievance at an administrative level does not establish the affirmative link required to establish supervisor liability for an employee's conduct." *Boles v. Dansdill*, No. 05-cv-01661-PSF-CBS, 2007 WL 2770473, at *4 (D. Colo. Sept. 20, 2007) (unpublished decision) (citing *Johnson v. G.E.O./Lawton Corr. Facility*, No. Civ-04-1467-C, 2005 WL 2739212, at *1 (W.D. Okla. Oct. 24, 2005) (unpublished decision)). Therefore, to the extent that Plaintiff is asserting liability against Defendants Ellis and Thompson on the theory of supervisory liability, mere participation in the grievance process is an insufficient basis for doing so. *Id.*; *see also Coates v. Sheahan*, No. 94-cv-6107, 1995 WL 430950, at *2 (N.D. Ill. July 18, 1995) (unpublished decision) (holding that grievances submitted to a supervisory official are insufficient to establish the official's personal participation in a constitutional violation).

Accordingly, the Court respectfully **RECOMMENDS** that the Motion to Dismiss be **GRANTED** in favor of Defendants Ellis and Thompson and that the claims against them

be **dismissed**.  As such, the remainder of this Recommendation addresses the potential liability of Defendant Milner.

###     D.     Eighth Amendment

The Eighth Amendment prohibits cruel and unusual punishment.  U.S. Const. amend VIII.  As such, it requires that "prison officials . . . ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).  The Court's analysis of Plaintiff's Eighth Amendment claim involves both an objective and subjective component.  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

As to the objective component, the Court considers whether Plaintiff has been deprived of a sufficiently serious basic human need, i.e., an extreme deprivation.  "Because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,' 'only those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation.'"  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations omitted).  The "'core areas' of any Eighth Amendment claim are shelter, sanitation, food, personal safety, medical care, and adequate clothing."  *Clemmons v. Bohannon*, 956 F.2d 1523, 1527 (10th Cir. 1992) (quoting *Ramos v. Lamm*, 639 F.2d 559, 566 n.8 (10th Cir. 1980)).  As to the subjective component, the Court considers whether Defendant Milner intended the deprivation, i.e, acted with deliberate indifference to the harm that could result.  Deliberate indifference can only be proved by showing that Defendant Milner "kn[ew] of or disregard[ed] an excessive risk to inmate health and safety."  *Farmer*, 511 U.S. at 837.

6

Addressing whether Plaintiff has sufficiently stated an objective injury, the Court notes that education is not one of the core areas generally recognized to be protected by the Eighth Amendment. *See generally Trujillo v. Williams*, 465 F.3d 1210, 1225 n.17 (10th Cir. 2006) (noting that an allegation regarding limited access to education does not state an objective Eighth Amendment violation). Moreover, "this Circuit has never determined that prisoners enjoy an entitlement to education or rehabilitative services, only to an environment non-threatening to mental and physical well being." *Robinson v. Smith*, 982 F.2d 529 (table) (10th Cir. Dec. 09, 1992) (unpublished decision). The provision of education "is not a federally-guaranteed right." *Id.*; *see also Baker v. Holden*, 787 F. Supp. 1008, 1016 (D. Utah 1992) (noting that Court would "have to wrench the Eighth Amendment from its language and history to hold that delay of [desirable education] violates the Constitution"); *Termunde v. Cook*, 684 F. Supp. 255, 259 (D. Utah 1988) ("Courts have not accepted the claim that an inmate has a constitutional right to any educational, or other programs, and there has never been a recognized constitutional right of rehabilitation for prisoners. Such interests are not mandated by the Eighth Amendment . . . ." (citations omitted)). Accordingly, I find that Plaintiff has failed to plead sufficient information that would suggest that she was deprived of an objectively serious basic human need for purposes of her Eighth Amendment claim.

Further, even if Plaintiff could show that she was deprived of an objectively serious basic human need, there are no allegations in her complaint that suggest that Defendant Milner was deliberately indifferent to Plaintiff's health or safety. The only assertions that could arguably relate to Defendant Milner's subjective state of mind are Plaintiff's statements that, through Defendant Milner's actions, she "inflict[ed] cruel and unusual

punishment" and that Defendant Milner told Plaintiff that she was "unteachable." *Complaint* [#4] at 3-4. These conclusory assertions, without more, do not adequately plead the requisite subjective state of mind of Defendant Milner to support an Eighth Amendment claim.

Accordingly, the Court respectfully **RECOMMENDS** that the Motion to Dismiss be **GRANTED in part** and that to the extent Plaintiff's claim asserts an injury pursuant to the Eighth Amendment, that the claim be **dismissed**.

### E. Fourteenth Amendment

#### 1. Due Process

Although it is debatable whether Plaintiff's complaint explicitly states a claim for a Fourteenth Amendment due process violation, the parties have briefed the issue, and the Court elects to consider it. To state a Fourteenth Amendment due process claim, a plaintiff must allege facts that satisfy two elements. *See Bd. of Regents v. Roth*, 408 U.S. 564, 568-71 (1972). First, she must show that she possesses a protected liberty interest. *See id.*; *Veile v. Martinson*, 258 F.3d 1180, 1184-85 (10th Cir. 2001). Second, she must show that she was not afforded the appropriate level of process. *See Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131, 1135 (10th Cir. 1994). Here, Defendant Milner argues that Plaintiff's complaint fails to present sufficient allegations to satisfy either element of the Fourteenth Amendment due process analysis. *Motion to Dismiss* [#86] at 8-10.

Liberty interests "are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits

8

and that support claims of entitlement to those benefits." *Roth*, 408 U.S. at 577. While "the

constitutional rights that prisoners possess are more limited in scope than the constitutional

rights held by individuals in society at large," *Shaw v. Murphy*, 532 U.S. 223, 228 (2001),

this reality is tempered by the recognition that "[t]here is no iron curtain drawn between the

Constitution and the prisons of this country." *Wolff v. McDonnell*, 418 U.S. 539, 555-56

(1974).

Here, although not explicitly pled in her complaint, Plaintiff contends that a Colorado

state statute creates a liberty interest in receiving an education while incarcerated.

*Response* [#36] at 5. Specifically, she cites to Colo. Rev. Stat. § 17-32-102, which states:

> The general assembly hereby finds and declares that illiteracy is a problem in today's society and a particular problem among persons in correctional facilities. The general assembly further finds and declares that illiteracy among persons in custody of the department contributes to their frustration and the likelihood of their return to criminal activity. It is therefore the intent of the general assembly in enacting this article to develop and implement a comprehensive competency-based education program to combat illiteracy among persons in correctional facilities so that they can become more productive members of society when reintegrated into the community.

The Court has not located a state or federal case interpreting this statute or holding that the

development of an education program to combat illiteracy creates a liberty interest in

Colorado state prisoners' receiving an education. The Court notes that the Colorado

legislature codified the goals and objectives of the educational program and denoted as its

first goal "to ensure that every inmate in a correctional facility shall receive appropriate

academic services mandated by federal or state statutes, regulations, or orders." Colo.

Rev. Stat. § 17-32-105(a).

Courts considering similar state statutes have held that such statutes confer a liberty

interest on prisoners to receive an education. *See, e.g.*, *Clarkson v. Coughlin*, 898 F. Supp. 1019, 1040-41 (S.D.N.Y. 1995) (finding that state statute conferred a right on prisoners to receive at least some form of education and that "[d]epriving an inmate of such a program triggers the protections of the Due Process Clause"); *Ass'n for Reduction of Violence v. Hall*, 558 F. Supp. 661, 663 (D. Mass. 1983), *vacated in part on other grounds by* 734 F.2d 63 (1st Cir. 1984) (holding that state statute regarding the establishment of education programs for state prisoners conferred a liberty interest). *But see Hernandez v. Johnston*, 833 F.2d 1316, 1319 (9th Cir. 1987) (holding that state statute related to the goal of the state corrections department, which did not mention that inmates should be provided an education, did not confer a liberty interest on inmates to receive an education).

Other courts have held that even absent a state statute, prisoners have a right to receive at least some form of education. *See, e.g.*, *Donnell v. Ill. State Bd. of Educ.*, 829 F. Supp. 1016, 1018 (N.D. Ill. 1993) (holding that allegations by prison detainees "of a lack of instruction on even the educational basics, or worse, a total lack of instruction altogether . . . states a claim under the substantive component of the Due Process clause"); *Glover v. Johnson*, 478 F. Supp. 1075, 1084-85 (D. Mich. 1979) (noting that where state has chosen to emphasize education opportunities by creating educational programs, all inmates, regardless of gender, should be given the opportunity to participate).

Although persuasive, the precedential value of the above caselaw is impacted by the Supreme Court's holding in *Sandin v. Connor* that, for prisoners, a liberty interest exists only where a specific prison action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995). As the *Sandin* Court made clear, mere language of a statute or regulation

alone does not create a constitutionally-protected right. *See id.* at 483 ("[W]e believe that the search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause."). Instead, the relevant question is whether the alleged deprivation imposes an atypical and significant hardship on the prisoner. *Id.* at 484.

The question of whether the deprivation of the educational program imposes an atypical hardship on Plaintiff necessitates a comparison of how other inmates are treated. Attached to Plaintiff's complaint are the step 1 and step 2 grievance responses provided by the facility related to this issue. In response to Plaintiff's step 1 grievance, the facility responded that the "Department has a right to drop you from the educational classes as there has not been any progress on your part. We are mandated to show progress for each student and if it does not happen then we need to drop the student to allow other students to take these classes." *Complaint* [#4] at 8. In response to Plaintiff's step 2 grievance, the facility responded:

> Per AR 500-01, . . . "[a] person in a correctional facility who lacks basic communication and functional literacy skills shall be required to attend academic programs[ . . . ]unless such person—[f]ails to progress at least one[-]half grade level after six months of formal education."
>
> You have been in adult basic education classes off and on for over 6 years and in that time frame you have failed to progress from your original TABE scores. Ms. Milner ABE Instructor offered you special 1 on 1 assistance you however only showed up twice. Everything possible has been offered to you within the correctional setting. Your request to be put back in education is denied.

*Id.* at 9 (quoting CDOC Admin. Reg. 500-01(IV)(C)(3)(g)).

As the Court reads the policy set forth in CDOC Admin. Reg. 500-01, all inmates

lacking a certain level of functionality are *required* to attend educational training.[1]  This language is similar to that found in the state statute setting forth the goals of the educational program.  Colo. Rev. Stat. § 17-32-105(3)(b).  Further, the Court does not read the policy or statute to authorize the facility to remove an inmate from the program against her will.  Both the policy and statute merely state that if an inmate fails to progress, the educational program will no longer be required of the *inmate*, not of the facility itself. Therefore, I find that a decision to wholly deprive Plaintiff of participation in the educational program, when for most inmates such participation is not only provided, but required, may impose an atypical hardship on this inmate.  I further find that deprivation of an education to this Plaintiff under these circumstances may constitute a significant hardship, as recognized by the Colorado legislature in enacting Colo. Rev. Stat. § 17-32-102.

Considering the apparent atypical and significant nature of the deprivation, I find that a complaint which alleges a total lack of education, when such is available to others who are similarly situated, may state a claim for deprivation of a liberty interest.  Without doubt, the state statutes at issue do not confer on prisoners a liberty interest to have the education of their choice or a full-time education.  However, in response to these statutes, the CDOC has passed regulations regarding the provision of education to prisoners and established an educational program that is, for the majority of inmates, a required program.  Therefore, I find that the presence and mandatory nature of CDOC's educational program may

---

[1] "The court can take judicial notice of agency rules and regulations." *Ray v. Aztec Well Serv. Co.*, 748 F.2d 888, 889 (10th Cir. 1984).  Further, "'the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)).

"create[] more than the mere hope or expectation that educational programs will be provided." *See Hall*, 558 F. Supp. at 663. While the CDOC has made exceptions for inmates who fail to progress, these exceptions do not necessarily absolve it of the responsibility it has assumed to educate inmates, particularly where inmates choose to participate even when not required to do so. Nor does the CDOC's refusal to educate those who do not progress appear to be in line with the stated goal of the educational program "to combat illiteracy among persons in correctional facilities so that they can become more productive members of society when reintegrated into the community." *See* Colo. Rev. Stat. § 17-32-102.

To be clear, I do not intend to suggest and do not hold that the CDOC can never deprive an inmate of participation in its educational program or that every limitation will be, on its face, atypical. Indeed, if an inmate consistently fails to progress despite being provided every reasonable opportunity to succeed, both to the detriment of herself and others, the CDOC may have a legitimate penological interest in ceasing education efforts. The Court further notes that the law requires that an inmate receive a sufficient level of due process before deprivation of a liberty interest. *Wilkinson v. Austin*, 545 U.S. 209, 224-25 (2005); *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). However, at this stage of the proceedings, the Court makes no finding as to what level of due process may be required.

As indicated above, the Court holds that considering these pleadings, Plaintiff may have a plausible liberty interest in receiving at least some form of education while incarcerated. Accordingly, a properly-pled complaint could state a claim for a violation of that liberty interest. However, Plaintiff's complaint, as it is presently written, does not contain sufficient allegations to state such a claim. As I noted earlier, the complaint does

not appear to directly implicate any due process concerns. Although Plaintiff provides more information about the scope of this potential claim in her Response, generally, the Court must rely on allegations made in Plaintiff's complaint in addressing whether she has adequately stated a claim. *See Smith v. Plati*, 258 F.3d 1167, 1172 n.2 (10th Cir. 2001). The present complaint fails to sufficiently allege that Plaintiff has a liberty interest in receiving an education or that she was denied the process that was due to her when that interest was taken away. More specifically, Plaintiff's complaint does not articulate what type of process (e.g., notice and a hearing) should have been, but was not, provided to her prior to the CDOC's removal of her from the educational program.

In addition, Plaintiff's complaint fails to request the appropriate type of relief for deprivation of a liberty interest. Defendant Milner asserts that even if Plaintiff's due process rights were violated, she is entitled to qualified immunity for claims brought against her in her individual capacity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (holding that a plaintiff must establish the violation of a clearly established right to defeat qualified immunity). I agree. Because the law was not clearly established that Plaintiff may have a liberty interest in participating in state-provided educational programs, Defendant Milner was not on notice that her denial of Plaintiff's request to participate implicated a constitutional right. In such a case, she is entitled to qualified immunity for Plaintiff's due process claim brought against her in her individual capacity. Therefore, Plaintiff may not obtain any money damages from Defendant Milner, whether nominal, compensatory, or punitive.

This holding does not apply, however, to a claim for injunctive relief brought against Defendant Milner in her official capacity. *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1233 &

n.3 (10th Cir. 2004). As noted earlier, it is unclear whether Plaintiff intended to sue Defendant Milner in her official capacity. Giving Plaintiff the benefit of liberal pleading interpretation, the Court finds that such a claim could be asserted in Plaintiff's complaint. However, in Plaintiff's "Request for Relief," she does not appear to request injunctive relief, i.e., reinstatement in the educational program. *See Complaint* [#4] at 6. Rather, she only seeks "exemplary damages and punitive damages." Given that Plaintiff is proceeding *pro se*, and that the Court construes her complaint in the light most favorable to her, I find that a claim for injunctive relief is also implicit in her pleadings. *See Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 808 (10th Cir. 1999) (finding that "[a]though plaintiff's complaint does not include an express request for injunctive relief, a liberal construction of his allegations demonstrates a clear desire for injunctive relief").

First, Plaintiff specifically references the step 1 and step 2 grievances that she filed. *Complaint* [#4] at 3. Second, she attaches those grievances to her complaint. *Id.* at 7, 9. In both grievances, she requested reinstatement in the educational program. Third, she also references a step 3 grievance that she allegedly filed where she again sought reinstatement. *Id.* at 10. If Plaintiff chooses to amend her complaint to adequately state a claim for a Fourteenth Amendment due process violation, she must also make a specific demand for injunctive and/or declaratory relief, given Defendant Milner's qualified immunity.

In summary, while I agree that Plaintiff's complaint should be dismissed as it is presently pled, dismissal in this instance is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice. *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989). In

this jurisdiction, courts frequently do not dismiss a claim pursuant to Fed. R. Civ. P. 12(b)(6) until the *pro se* plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations. *See Bellmon*, 935 F.2d at 1109-10. I recommend that Plaintiff be given the opportunity to amend her complaint to (1) allege deprivation of a liberty interest; and (2) state the level of process that she claims she was due prior the deprivation of that liberty interest. I further find that if Plaintiff chooses to amend her complaint, she must explicitly state in her complaint (3) whether she is suing Defendant Milner in her official capacity and (4) whether she is seeking reinstatement to the CDOC's educational program. Because Defendant Milner is entitled to qualified immunity, Plaintiff may no longer assert a claim for money damages against her.

Accordingly, the Court respectfully **RECOMMENDS** that the Motion to Dismiss be **DENIED in part** as to Defendant Milner's assertion that Plaintiff has failed to state a Fourteenth Amendment due process claim upon which relief may be granted, and that Plaintiff be given an opportunity to amend her complaint to sufficiently state a Fourteenth Amendment due process claim as detailed above.[2]

### 2. Equal Protection

Plaintiff's complaint contains allegations implicating her Fourteenth Amendment right to equal protection. Specifically, she claims that "[v]iolations of Equal Protection . . . occur

---

[2] Because I find that this issue is within the proper scope of the Fourteenth Amendment, I do not recommend that Plaintiff be given an opportunity to amend her complaint to also state a claim for an Eighth Amendment violation. Plaintiff has pointed to no case that holds that the denial of an inmate's participation in an educational program constitutes cruel and unusual punishment and, as noted earlier, I find that such an interpretation would be a strained application of the rights protected by the Eighth Amendment given the existing facts at issue here.

when similarly situated persons are treated dissimilarly." *Complaint* [#4] at 4. She further contends that she "is suffering dissimilar treatment by [Defendant Milner] as The [sic] LaVista Correctional Facility provides edcuation [sic] to other persons with learning disabilities."

The Equal Protection Clause of the Fourteenth Amendment prohibits the government from treating similarly situated individuals differently. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). In order for Plaintiff to state an equal protection claim, she must allege that Defendants either denied a fundamental right or provided differential treatment based on a suspect classification. *See, e.g.*, *Brown v. Zavaras*, 63 F.3d 967, 971 (10th Cir. 1995). If the Plaintiff is not a member of a protected class and does not assert a fundamental right, the court must only determine whether the alleged discriminatory action has a rational basis. *Id.*; *see also Gwinn v. Awmiller*, 354 F.3d 1211, 1228 (10th Cir. 2004) (holding "absent an allegation of a suspect classification, our review of prison officials' differing treatment of various inmates is quite deferential" and considering only whether the treatment was "reasonably related to a legitimate penological purpose").

As a preliminary matter, determining whether education is a fundamental right involves an assessment of "whether there is a right to education explicitly or implicitly guaranteed by the Constitution." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 34 (1973). The Supreme Court has emphatically held that education "is not among the rights afforded explicit protection under our Federal Constitution. Nor . . . [is there] any basis for saying it is implicitly so protected." *Id.* at 35. Therefore, to avoid a deferential consideration of whether Defendant Milner's alleged discriminatory action was merely

rational, Plaintiff must allege that she is a member of a protected class and was treated differently from similarly-situated members of that class.

Plaintiff alleges that she suffers from a learning disability, and that Defendant Milner treated her differently from others with learning disabilities. *Complaint* [#4] at 4. Plaintiff does not identify the learning disability from which she allegedly suffers. Regardless, individuals with learning disabilities are not a protected class within the meaning of the Equal Protection Clause. *Cleyburne*, 473 U.S. at 442-46; *Doe v. Bd. of Trustees of Univ. of Ill.*, 429 F. Supp. 2d 930, 943 (N.D. Ill. 2006). Therefore, Plaintiff is not a member of a suspect class and because no action was taken which denied her of a fundamental right, the state may impose allegedly discriminatory conditions if such a decision is rationally related to a legitimate state interest. *Riddle v. Mondragon*, 83 F.3d 1197, 1207 (10th Cir. 1996); *Jacobs, Visconsi, & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1119 (10th Cir. 1991).

The CDOC's alleged discriminatory treatment is subject to rational basis review, which presumes constitutionality and under which Plaintiff bears the burden of establishing irrationality or arbitrariness. *United States v. Phelps*, 17 F.3d 1334, 1344-45 (10th Cir. 1994). I find that such an analysis cannot be made at this stage of the proceedings. As noted earlier, while I do not doubt that the CDOC may put forth sufficient evidence and arguments to rationally justify its decision, I find that Plaintiff's complaint minimally alleges that Defendant Milner's decision was not rational or related to a legitimate state interest for purposes of surviving the Motion to Dismiss. For instance, in the grievances attached to her complaint, Plaintiff claims that Defendant Milner's decision was arbitrary because Plaintiff was adequately progressing in her education. *Complaint* [#4] at 7, 9. She also

18

takes issue with Defendant Milner's alleged statement that she was being denied access to education because she is "unteachable." *See id.* at 3. However, as noted earlier, Defendant Milner is entitled to qualified immunity in her individual capacity because no clearly established law implicates her decision to remove Plaintiff from the educational program. However, to the extent that Plaintiff amends her complaint to assert a claim for injunctive relief against Defendant Milner in her official capacity, and she reasserts her equal protection claim, this claim should go forward.

Accordingly, the Court respectfully **RECOMMENDS** that the Motion to Dismiss be **DENIED in part** as to the issue of whether Plaintiff has stated an equal protection violation, and that Plaintiff be given an opportunity to amend her complaint to sufficiently state the relief that she intends to seek.

### F.    Physical Injury

Defendant Milner argues that Plaintiff's case is barred by the Prison Litigation Reform Act ("PLRA"). *Motion to Dismiss* [#27] at 9-10. She relies on subsection (e) of the PLRA, which states: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Pursuant to 42 U.S.C. § 1997e(e), Plaintiff's "suit cannot stand unless [she] has suffered a physical injury in addition to mental or emotional harms." *Perkins*, 165 F.3d at 807.

However, the Court finds that the PLRA's physical injury requirement is only applicable to Plaintiff's claim for money damages against Defendant Milner. Because I find that Plaintiff may not proceed on her claims against Defendant Milner in her individual

capacity, and that Defendant Milner is immune from money damages suits against her in her official capacity, the limitations of the PLRA do not apply and would not serve to preclude any claims for injunctive relief that Plaintiff may intend to seek. *See id.* at 808 (holding that "§ 1997e(e) [does] not bar claims for injunctive relief").

### IV. Conclusion

For the reasons stated above, the Court RECOMMENDS that the Motion to Dismiss be **GRANTED in part and DENIED in part**.

IT IS FURTHER RECOMMENDED that Defendants' Motion to Dismiss (1) Plaintiff's official capacity claims against Defendants for money damages; (2) Defendants Ellis and Thompson; and (3) Plaintiff's Eighth Amendment claim should be **GRANTED**, and that these claims and parties be **DISMISSED**.

IT IS FURTHER RECOMMENDED that Defendants' Motion to Dismiss Plaintiff's claims for Fourteenth Amendment due process and equal protection violations against Defendant Milner should be **DENIED**, and that Plaintiff be permitted to file an amended complaint in the manner discussed within **thirty (30) days** of the District Court's acceptance of this Recommendation, if appropriate.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal

questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: September 26, 2008

BY THE COURT:

 s/ Kristen L. Mix
U.S. Magistrate Judge
Kristen L. Mix